# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**TIMOTHY TURNER**            **PLAINTIFF**

**v.**            **No. 4:05CV97-D-A**

**SUPERINTENDENT DONALD CABANA, ET AL.**            **DEFENDANTS**

## REPORT AND RECOMMENDATION

On August 18, 2005, plaintiff Timothy Turner, an inmate in the custody of the Mississippi State Penitentiary with inmate number 38850, appeared before the undersigned for a hearing pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed pursuant to 42 U.S.C. § 1983. A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this lawsuit.[1]

### Facts - As Alleged

This case presents the court with a claim that prison officials failed to protect the plaintiff from the attack of another inmate. At the time of the incident in question, the plaintiff (who has been validated as and admits that he is a member of the Aryan Nation gang) was housed at the Mississippi State Penitentiary Security Threat Group Management Unit which was, at the time, Unit 17.[2] The inmates housed in that unit remain on lockdown twenty-three hours per day and

---

[1] 28 U.S.C. § 1915(g).

[2] Security Threat Group inmates are now housed in Unit 32.

have one hour per day of yard call, which consists of placement outdoors in individual pens. During yard call on June 29, 2004, inmate Lester Nash (who has been validated as a member of the gang called the Vice Lords) unwound the "cyclone fence" between his pen and the plaintiff's, crawled through the hole he had just made, and took out a knife from the front of his pants with the obvious intent of attacking the plaintiff. At this point the plaintiff attempted to no avail to get the attention of the guards overseeing yard call. In an effort to escape the impending attack, the plaintiff dived through the hole Nash had made – thus entering the pen Nash had just left. Nash followed the plaintiff, cornered him, and stabbed him many times, resulting in numerous injuries, including a deep cut beginning in the center of the plaintiff's forehead and ending above his left ear. That wound required emergency surgical repair of ten arteries, took eleven stitches to close, and has left the plaintiff without feeling in most of the left side of his scalp. The plaintiff also sustained a broken nose, two black eyes, and numerous bruises. During his testimony at the *Spears* hearing, the plaintiff stated that he knew who Nash was prior to the June 29, 2004, attack, had never had any adversarial encounter with him and had no reason to anticipate the attack.

### The Plaintiff's Claims

The plaintiff's allegations focus on two areas. First, the staff and inmates at Unit 17 knew that the pens in the recreation yard were a security threat, as this was not the first time an inmate had crawled through a hole in one of the pens to attack another inmate. Also, inmate Nash had a long history of institutional violence, with several stabbings to his credit. Second, whatever guard removed Nash from his cell was supposed to strip search Nash and did not properly carry out that search, as Nash managed to smuggle a knife from his cell into the recreation yard.

## Failure to Protect

The plaintiff's claims regarding the defendants' knowledge of previous failures of the exercise yard fence – and Lester Nash's history of institutional violence – must fail, as the plaintiff has not shown that Nash or the fences posed a particular threat to the plaintiff himself. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference is the standard for convicted prisoners claiming that prison official failed to protect them from harm. *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). The plaintiff must allege that the defendants acted with reckless disregard to the possibility that Nash would crawl through the fence and attack him with a knife. To meet this standard the plaintiff must allege that the responsible officials knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The plaintiff stated under oath that he himself did not anticipate the attack – and that he knew of no way that the defendants could have done so either. As such, the plaintiff has failed to allege that the defendants "consciously disregard[ed] a substantial risk of serious harm," which is necessary to state a failure to protect claim under § 1983. *Id.* at 826 (citation omitted).

## Mere Negligence

The plaintiff's claims against the prison guards who failed to conduct a proper search of Nash before releasing him for yard call must fail as well, as negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). The plaintiff has not

alleged that the guards knew Nash was armed and refused to search him; instead, he has alleged that the guards failed to conduct a proper search – a search which would have prevented Nash from reaching his exercise pen armed with a knife. This claim sounds wholly in negligence. The Court in *Daniels* discussed the historical reason behind the Due Process Clause of the Fourteenth Amendment and its prohibition against *deliberate* decisions of government officials to deprive a person of life, liberty or property. *Daniels* at 331-32. "This history reflects the traditional and common-sense notion that the Due Process Clause, like its forbear in the Magna Carta, was 'intended to secure the individual from the arbitrary exercise of the powers of government.'"[3]

The Court reasoned

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process law.
>
> . . .
>
> Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure or compensation is *constitutionally* required.

*Id.* (internal citations omitted) (emphasis added). The plaintiff's claim, read in a light most favorable to the plaintiff, sounds wholly in negligence. Thus, under the reasoning of *Daniels* and *Davidson, supra,* all of the plaintiff's claims regarding the defendant guards' failure to conduct a proper search should be dismissed with prejudice.

As regrettable as it may be that plaintiff has no remedy against the defendants in this case of obvious serious injury, the law mandates that all of the plaintiff's claims should be dismissed

---

[3] *Id.*, citing *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 116, 28 L.Ed. 232 (1884) (quoting *Bank of Columbia v. Okely*, 4 Wheat. (17 U.S.) 235, 244, 4 L.Ed. 559 (1819)) (internal citations omitted). See also *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government . . . .")

with prejudice.

### Handling of Objections, Acknowledgment of Receipt

The court refers the parties to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within ten (10) days of this date. The plaintiff is warned that failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.

Respectfully submitted this 25th day of August, 2005.

/s/   S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE